UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**GLENN R. BAKER,**

    Plaintiff,

v.                                                                                    CASE NO.

**BRUNSWICK CORPORATION,** a
Delaware corporation, **MARINEMAX
EAST, INC.,** a Delaware corporation, and
**BOSTON WHALER, INC.,** a Delaware
corporation,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Glenn R. Baker, sues Defendants, Brunswick Corporation, a Delaware corporation, MarineMax East, Inc., a Delaware corporation, and Boston Whaler, Inc., a Delaware corporation, and alleges as follows:

### PARIES, JURISDICTION, VENUE

1.    This is a civil action for damages concerning the purchase of a 2015 Boston Whaler 35-foot Outrage ("the vessel").

2.    Plaintiff, Glenn R. Baker ("Baker"), is an individual who was residing, at all relevant times, in Sanibel, Florida.

3.    Defendant, Brunswick Corporation is a Delaware corporation with its principal place of business in Lake Forest, Illinois, doing business in Florida. The Mercury Marine Division of Brunswick Corporation ("Mercury Marine") manufactured parts of the vessel at issue here.

4. Defendant, MarineMax East, Inc. ("MarineMax"), is a Delaware corporation with its principal address in Clearwater, Florida.

5. Defendant, Boston Whaler, Inc. ("Boston Whaler"), is a Delaware corporation with its principal place of business in Edgewater, Florida.

6. Venue is proper in this court as Defendants transact business in Lee County, Florida, and/or material events and occurrences giving rise to this cause of action occurred in Lee County, Florida.

7. This Court has federal question jurisdiction over Count I because Plaintiff is bringing a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* and the amount in controversy is in excess of $75,000.00, exclusive of interest, attorney's fees, and costs.

8. This Court has supplemental jurisdiction over the remaining counts that arise under state law because they are so related to the claims in Count I that they form part of the same case or controversy.

9. All conditions precedent to the maintenance of this cause of action have been satisfied, have occurred, or have otherwise been waived.

**FACTUAL ALLEGATIONS**

10. Through a common and uniform course of action, Defendants manufactured, supplied, promoted and sold a series of vessels known as a 35-foot Boston Whaler Outrage when they knew or should have known the Mercury joystick piloting the Verado outboard engine (steering mechanism) was defective and would cause the vessel to vibrate excessively and in many instances it would, in effect, shut down the operation of the vessel in the middle of the ocean which required an owner to have to tow the vessel to a shipyard for attempted repairs.

11. The Plaintiff, Glenn R. Baker, purchased his 35-foot Boston Whaler Outrage from MarineMax on or about May 2015. The Defendants prior to, or at the time of the delivery of the vessel, failed to disclose to Baker there had been a Notice of Recall of the steering mechanism under the U.S. Federal Boat Safety Act some eight (8) days before the delivery of the vessel to him.

12. While the Defendants currently deny that they had notice of the recall prior to the delivery of the vessel, it was not until approximately three weeks after delivery of the vessel that Mercury first sent to Baker the recall notice.

13. Through a common and uniform course of conduct, Defendants acting individually and collectively through their agents and dealers failed to adequately disclose to the consuming public the fact the steering mechanism was defective and would cease functioning with no warning.

14. The purpose of this action is to hold accountable, and to obtain maximum legal and equitable relief from the Defendants for placing into the stream of commerce the Boston Whaler with the defective manufactured steering mechanism.

15. The vessel and its Mercury steering mechanism were separately warranted by MarineMax and Mercury to be free of defects in material, workmanship and design. The warranties have been in place for the entire period of ownership of the vessel by Baker.

16. At all times relevant hereto, Defendants through their agents, distributors, servants and/or employees, engaged in the design, manufacture, marketing, sale and delivery of the 35-foot Boston Whaler Outrage nationally.

17. Defendants conduct business throughout Florida and the United States.

18. On or about December 2015, the steering mechanism failed and has continuously failed despite repeated attempts to repair the steering mechanism by MarineMax.

19. Baker, because of the continuing issues with the steering mechanism and the numerous breakdowns in the middle of transit through the Gulf of Mexico and international waters, after multiple attempts to repair the steering mechanism returned the vessel to MarineMax in August 2017 and asked for a rescission of the sale and related damages. A copy of his letter to the Defendants is attached to this Complaint as **Exhibit A**.

20. Baker paid approximately Five-Hundred Thousand Dollars ($500,000.00) for the vessel. Baker also purchased from MarineMax a manufactures' warranty and a product protection plan and benefits from Mercury Marine.

21. In response to his letter, the Defendants did not dispute Baker's assessment and instead offered to sell him another boat to replace the 35 ft. Boston Whaler Outrage.

22. Defendants' unilateral limitation of warranty has failed the essential purpose of the warranty, as that term is used in the Uniform Commercial Code ("the UCC"), because Defendants have failed to repair or replace the defective steering mechanism with a non-defective steering mechanism and because Defendants have executed the warranty in such a way as to replace parts of the defective steering mechanism with apparently other defective parts.

23. The warranty reads "manufacturer's warranty, the boat motor and accessories sold pursuant to this agreement are only subject to applicable manufacturer's warranties, if any, except, as otherwise expressly provided in this agreement."

24. Defendants failed to disclose at the time they marketed, warranted, sold and or delivered the 35' Boston Whaler Outrage to Baker the steering mechanism was defective.

25. At all relevant times, Defendants controlled the design, manufacture, marketing, and sale of the 35' Boston Whaler Outrage and its parts.

26. The Owner Manual provided to Baker and the interval service policies followed by the Dealers in effect during the period relevant to this Complaint, were wholly inadequate to alert Baker to the increased costs, servicing requirements and duration and limitations associated with the use of the vessel.

27. Defendants knew, or should have known, the design, materials and workmanship utilized for the steering mechanism were insufficient to handle the use of the vessel in conditions that characterize everyday use on the water in the United States and internationally.

28. Under the UCC, "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance . . . the cause of action accrues when the breach is or should have been discovered." UCC Sales § 2-725(2).

29. Defendants also breached their express and implied warranties, as they did not deliver a vessel having the characteristics, uses and benefits portrayed by Defendants.

30. Defendants' failure to disclose the defects with the steering mechanism renders the warranty objectively and materially misleading. Defendants knew of, or recklessly disregarded, the fact that the steering mechanism and vessel was incapable of achieving the use for which it was intended. Therefore, to the extent the warranty is so limited, Defendants have engaged in an unfair and deceptive warranty practice.

## COUNT I
### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)

31. Paragraphs 1 through 30 are incorporated herein by reference as through the same were set forth below at length.

32. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (the "Act") in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive, and were not being honored. To remedy this problem of deception and failure to honor warranties, the Act imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under a written warranty and/or implied warranty. *See* 15 U.S.C. § 2310(d)(1). The Act authorizes a "suit for damages and other legal and equitable relief." *Id.* The Act also authorizes the award of attorneys' fees (*id.*) and expressly authorizes class actions. 15 U.S.C. § 2310(d)(2).

33. Defendants are "warrantor[s]" within the meaning of Section 2301(5) of the Act.

34. Baker is a consumer within the meaning of Section 2301(3) of the Act.

35. As set forth above, the allegations of which are incorporated herein by reference, Defendants expressly warranted the vessel and its parts which warranties are "written warranties" within the meaning of Section 2301(6) of the Act and the UCC.

36. Defendants breached their express warranties in the manner described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Baker against Defendants of, among other things, the purchase price of the vessel as well as interest, attorneys' fees, expert fees and costs of suit, and such other relief as the Court may deem just and proper.

## COUNT II
### Breach of Express Warranty

37. Paragraphs 1 through 30 are incorporated herein by reference as though the same were fully set forth at length.

38. The vessel and its parts were subject to express warranties as described herein, including affirmations, nondisclosures and related representations.

39. Defendants breached the express warranties in the manner described above.

40. The express warranties were part of the "basis of the bargain" as that term is used in the UCC and are presumed to be a part of the contract.

41. Baker has been damaged by Defendants breaches of the express warranties in the manner described above.

42. As set forth in Count above, Defendants impliedly warranted the vessel and its parts as being merchantable and fit for a particular purpose, which warranties are implied warranties within the meaning of Section 2301(7) of the Act, and Sections 2-314 and 2-315 of the UCC.

43. Defendants breached these implied warranties in the manner described above.

44. Any limitation period, limitation on recovery or exclusions of implied warranties are unconscionable within the meaning of Section 2-302 of the UCC and, therefore, are unenforceable, in that, among other things, Baker lacked a meaningful choice with respect to the terms of the written warranties due to unequal bargaining power and lack of warranty competition.

45. Defendants' knowledge of the fact that their steering mechanism was defective has given Defendants more than adequate opportunity to cure the problem, which they have not been able to do.

WHEREFORE, Plaintiff respectfully requests that the Court grant enter judgment in favor of Baker against Defendants of, among other things, the purchase price of the vessel as well as interest, attorneys' fees, expert fees and costs of suit, and such other relief as the Court may deem just and proper.

## COUNT III
### Breach of Implied Warranty

46. Paragraphs 1 through 30 are incorporated herein by reference as though the same were fully set forth at length.

47. Under common and statutory law, a warranty of merchantability and a warranty of fitness for particular purposes are implied in all sales transactions where the seller has reason to know the particular purpose for which the product is to be used and that the consuming public is relying on the skill or judgment of the seller to furnish a suitable product.

48. A warranty of merchantability is a warranty implied by law that a product is fit for the ordinary purposes for which it is used, is properly labeled and conforms to the representations made about it.  *See* UCC § 2-314.

49. A warranty of fitness for a particular purpose is a warranty implied by law that a product is fit for its intended use.  *See* UCC § 2-315.

50. The vessel and its parts were subject to both an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.

51. Defendants breached these warranties in the manner described above. In particular, the steering mechanism would not have been merchantable or fit for their particular purpose at the prices charged by the Defendants.

52. Baker has been damaged by Defendants' breaches of warranties in the manner described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Baker against Defendants of, among other things, the purchase price of the vessel as well as interest, attorneys' fees, expert fees and costs of suit, and such other relief as the Court may deem just and proper.

## COUNT IV
### Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

53. Paragraphs 1 through 30 are incorporated herein by reference as though the same were fully set forth at length.

54. This is an action against Defendants, for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA").

55. FDUTPA's definition of deceptive and unfair practices includes, but is not limited to, a deceptive act (defined as a practice, representation, or omission that is likely to mislead consumers), and/or an unfair practice (defined as a practice that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers).

56. Defendants violated FDUTPA by inducing Baker to enter into a purchase agreement to purchase the 35' Boston Whaler Outrage and its parts.

57. Defendants have engaged in deceptive and unfair trade practices via their representations and failure to disclose the defects with the steering mechanism and the prior recall notice.

58. Defendants' actions caused Baker to be damaged, including the loss of the purchase price, as well as the use of the vessel.

WHEREFORE, Baker demands judgment for rescission and for all equitable relief and actual damages available to him against Defendants, reasonable attorneys' fees and costs pursuant to Fla. Stat. §§ 501.201, *et seq.*, and such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Baker demands trial by jury of all rights, claims, and issues so triable.

                                           Respectfully Submitted,

Dated:  October 16, 2017            SHUMAKER, LOOP & KENDRICK, LLP

                                           */s/ C. Philip Campbell, Jr.*
                                           C. PHILIP CAMPBELL, JR. ESQUIRE
                                           Florida Bar Number 0160973
                                           101 East Kennedy Blvd., Suite 2800
                                           Tampa, Florida 33602
                                           (813) 229-7600 / (813) 229-1660 (Fax)
                                           pcampbell@slk-law.com (primary email)
                                           jraleigh@slk-law.com    (secondary email)
                                           *Attorney for Plaintiff, Glenn R. Baker*