**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**CASE NO. 17-00572-CIV-CHAPPELL/MCCOY**

GLENN R. BAKER

        Plaintiff,

v.

BRUNSWICK CORPORATION,
a Delaware corporation,
MARINEMAX EAST, INC.,
a Delaware corporation, and
BOSTON WHALER, INC.,
a Delaware corporation,

        Defendants.

_____/

**DEFENDANTS BRUNSWICK CORPORATION, MARINEMAX EAST, INC. AND**
**BOSTON WHALER, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants the Mercury Marine division of Brunswick Corporation ("Mercury"), MarineMax East, Inc. ("MarineMax") and Boston Whaler, Inc. ("Boston Whaler") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all counts in the Amended Complaint as to MarineMax and Boston Whaler and to dismiss Plaintiffs claims for Breach of Implied Warranty and Violation of Florida's Deceptive and Unfair Trade Practices Act (Counts III and IV) against Mercury because the Amended Complaint fails to state a cause of action as to those claims.

**INTRODUCTION**

In early 2015, Plaintiff purchased a 35-foot Outrage, manufactured by Boston Whaler, with Hull Number BWCE0145I112 (the "Subject Vessel") from MarineMax. The Subject Vessel is equipped with a joystick-operated outboard engine manufactured by the Mercury

Marine division of Brunswick Corporation ("Mercury").  Plaintiff used the Subject Vessel for over two years and now seeks by the present action to rescind the Purchase Agreement and force the return of his payment.  Plaintiff has brought claims against each of the Defendants for (1) Breach of Express Warranty Pursuant to the Magnuson-Moss Warranty Act; (2) Breach of Express Warranty, pursuant to Florida law; (3) Breach of Implied Warranty, pursuant to Florida law; and (4) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

As an initial matter, the Amended Complaint is unintelligible as it fails to distinguish or identify the alleged conduct of any one individual Defendant. The conduct complained of is averred in general terms and appears to implicate all Defendants under each Count despite each Defendant playing a distinct role in this case; namely, as the manufacturer of the Subject Vessel (Boston Whaler), engine manufacturer (Mercury), and boat supplier (MarineMax).  Plaintiff does not set forth specific facts against the individual Defendants and therefore the Amended Complaint simply does not meet the basic pleading standards under Rule 8 of the Federal Rules of Civil Procedure.

Additionally, Plaintiff fails to set forth the elements for breach of express and implied warranties under the Magnuson-Moss Warranty Act and Florida state law, and fails to meet the heightened pleading standard required for fraud-based claims in order to plead a violation of FDUTPA.  Indeed, in support of each Count, Plaintiff alleges nothing more than unfounded labels and conclusions, which are insufficient under the Federal Rules.  Accordingly, the Amended Complaint should be dismissed in its entirety.

## ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Pursuant to a Purchase Agreement Plaintiff entered into with MarineMax, on or about May 8, 2015, Plaintiff purchased the Subject Vessel, equipped with a joystick-piloted Mercury

Verado outboard engine (the "steering mechanism").  Amended Complaint ("Am. Compl.") ¶¶ 15, 16, 2; s*ee also* Purchase Agreement, a true and correct copy of which is attached hereto as **Exhibit A**.[1] MarineMax did not extend any written warranties to Plaintiff, as is evidenced by the clear language of the Purchase Agreement that:

> "[T]HE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER 'AS IS' AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF…"

*See* Ex. A at p. 2.  In connection with the purchase of the Subject Vessel, Plaintiff was provided with "an express limited warranty by Boston Whaler"—the Boston Whaler Express Limited Warranty (the "Limited Warranty")—and Plaintiff also received a "Product Protection Plan and Benefits from Mercury Marine." Am. Complaint ¶ 18.  A true and correct copy of the Limited Warranty is attached hereto as **Exhibit B**.

The Limited Warranty contains an express exclusion of coverage for "[e]quipment or accessories which are not installed by Boston Whaler or *which carry their own individual warranties*, including but not limited to *engines*, engine components, batteries, propellers, controls, *steering mechanisms*, and electronics." *See* Ex. B.  There are no issues raised in the Amended Complaint other than the steering mechanism.  *See generally* Am. Compl.  The Limited Warranty disclaims any other warranties, either express or implied. *See* Ex. B at 2, Other Limitations ("Except as set forth herein, there are no other warranties either express or implied provided by Boston Whaler on this boat.").

On or about August 2017, after more than two years of use, Plaintiff returned the Subject Vessel to MarineMax and demanded rescission of the sale.  Am. Compl. ¶ 28.

---

[1] "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). In this context, "undisputed" means that the authenticity of the document is not challenged.  *Id.*

## LEGAL STANDARD FOR A MOTION TO DISMISS

A Rule 12(b)(6) motion questions the legal sufficiency of a pleading.  In ruling on a Rule 12(b)(6) motion, this Court can assume that all of the factual allegations set forth in the four corners of the complaint are true.  *See, e.g., U.S. v. Gaubert*, 499 U.S. 315, 327 (1991); *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").  A complaint "does not need detailed factual allegations," but the allegations "must be enough to raise a right to relief above the speculative level." *Id.*

In addition to satisfying the Rule 8 requirements articulated by *Twombly* and *Iqbal*, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b).  This particularity requirement is required so as to "alert [ ] defendants to the precise misconduct with which they are charged and [to] protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (alterations in original, internal citation omitted).   Rule 9(b) therefore requires that a complaint alleging fraud-based claims must set forth the following with respect to each allegation of fraud:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and person responsible for making (or in, the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiffs; and (4) what the defendants obtained as a consequence of the fraud.

*Rogers v. Nacchio*, 241 Fed. App'x. 602, 608 (11th Cir. 2007) (quoting *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Where a complaint alleges fraud-based claims against multiple defendants, Rule 9(b) requires specific allegations with respect to ***each defendant***.  *Ambrosia Coal*, 482 F.3d at 1317; *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (emphasis added). These specific allegations "should inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia Coal*, 482 F.3d at 1317 (affirming dismissal of a RICO complaint on Rule 9(b) grounds where complaint failed to allege "the nature of each defendant's participation in the scheme," failed to identify "each alleged statement, document, or misrepresentation made with the proper level of precision," and failed to specify "the content or manner in which the statements [of misrepresentation] misled [the plaintiff]").

## **ARGUMENT**

### I.    PLAINTIFF FAILS TO PLEAD ANY COUNTS WITH THE REQUISITE SPECIFICITY

As an initial matter, Plaintiff wholly fails to allege sufficient facts in support of his claims against the individual Defendants.  Plaintiff's Amended Complaint is nothing more than a compilation of conclusory allegations and unfounded legal conclusions and does not meaningfully delineate i the conduct of one individual Defendant over another.  As a few examples of many throughout the Amended Complaint, Plaintiff alleges that "Defendants manufactured, supplied, promoted and sold a series of vessels"  and that "Defendants breached their express warranties in the manners described above." Am. Compl. ¶¶ 2, 54.  This is not even

possible, as Boston Whaler, Mercury, and MarineMax all manufacture or sell different products or services and MarineMax did not even provide a warranty to Plaintiff.  These and similar unspecified allegations throughout the Amended Complaint fail to put the individual Defendants on notice of their alleged conduct and make it difficult for any Defendant to answer with any accuracy.  The counts themselves aver few facts and fail to sufficiently distinguish amongst the conduct of the Defendants. As a result, the Amended Complaint is a variant—albeit not quintessential—"shotgun pleading."  *See Cook v. Randolph County*, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases).  Due to the factual overlap of the allegations and the failure of the counts to differentiate among the Defendants, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Bd. of Trustees of Central Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).[2]  The Amended Complaint is therefore due to be dismissed.

## II.  PLAINTIFF DOES NOT AND CANNOT STATE A CLAIM FOR BREACH OF WRITTEN WARRANTIES (COUNTS I AND III)

### A.  The Amended Complaint Does Not State a Prima Facie Case for Breach of Written Warranties

The facts presented in the Amended Complaint fail to state a prima facie case for breach of written limited warranty against any Defendant under the Magnuson Moss Warranty Act (the "Magnuson Moss Act") or Florida state law. The Magnuson Moss Act "establishes federal

---

[2] *See also George & Co. v. Alibaba.com, Inc.,* No. 2:10-cv-719-FtM- 29DNF, 2011 U.S. Dist. LEXIS 143365, at *5-6 (M.D. Fla., Dec. 13, 2011) (dismissing complaint where plaintiff "fail[ed] to distinguish [the Defendants's'] misconduct"); *Lane v. Capital Acquisitions & Mgmt., Co.,* No. 04-60602, 2006 U.S. Dist. LEXIS 96422, at *15 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," a complaint fails to satisfy the minimum requirements of Rule 8.); *Zike, LLC v. Catalfumo*, 2013 WL 12080225 (S.D. Fla. 2013) (dismissing amended complaint for failing to satisfy the pleading requirements of Fed. R. Civ. P. 8(a) and noting that "[Plaintiff] uses the collective term 'Defendants' throughout" and that "[t]he allegations fail to give adequate notice to each Defendant as to what each one allegedly did wrong.").

standards in respect of both consumer implied warranties and written warranties." *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. Oct. 1, 2012). The Magnuson-Moss Act permits "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation ... under a written warranty ..." to file suit for damages. 15 U.S.C. §2310(d)(1). The Magnuson-Moss Act is "virtually silent with respect to the imposition of requirements on manufacturers or sellers who issue a 'limited' warranty." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 323 (Fla. Dist. Ct. App. 2008); *Cerasani v. Am. Honda Motor Co.*, 916 So. 2d 843, 845 (Fla. Dist. Ct. App. 2005). "Therefore, the question whether a warrantor has committed a breach of a limited express warranty under the [Magnuson-Moss] Act is governed by state law." *Ocana*, 992 So. 2d at 323.

In Florida, "[a] warranty, whether express or implied, is fundamentally a contract." *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002) (applying Florida law). To sustain a claim for breach of express warranty under Florida law, a plaintiff must be in privity of contract with the opposing party. *Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.,* 8:09CV607-T-27MAP, 2010 WL 1223126 (M.D. Fla. Mar. 25, 2010) ("a claim for breach of express warranty generally cannot be brought pursuant to Florida law in the absence of contractual privity"); *see also Am. Coach Lines of Orlando, Inc. v. N. Amer. Bus Indus., Inc*., Case No. 6:09-cv-1999, 2011 WL 653524, *8 (M.D. Fla. Feb. 14, 2011). Privity arises from either direct contractual privity, indirect privity through acts of a party's agents, or through direct contacts between plaintiff and defendant intended to induce the sale of the products. *See generally Borchardt v. Mako Marine Int'l, Inc*., Case No. 08-61199-CIV, 2011 WL 2084177, *1-2 (S.D. Fla. May 24, 2011).

Notably, privity is not created where a manufacturer's express warranty is passed to an owner from an authorized dealer.  *See Mesa v. B.M. W. of N Am. LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005)*; Tolliver v. Monaco Coach Corp.*, Case No. 8:06-CV-856, 2006 WL 1678842, *2 (M.D. Fla. June 15, 2006) ("[A] plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant."). In *Mesa*, the plaintiff leased a vehicle, covered by the manufacturer's limited warranty, from an authorized dealer. *Id*.  The court found that a manufacturer's written warranty does not create privity between a manufacturer and a purchaser who did not make the purchase directly from the manufacturer. *See id*.

The evidence fails to establish privity between Plaintiff and either of Boston Whaler or Mercury in any respect.  For example, as in *Mesa*, the manufacture and mere issuance of a written warranty does not create privity for purposes of an implied warranty claim where the plaintiff did not purchase the property directly from the manufacturer or warrantor.  *See Mesa*, 904 So. 2d at 458.  It is uncontroverted that Plaintiff did not purchase the Subject Vessel directly from Boston Whaler.  To the contrary, Plaintiff alleges and the operative Purchase Agreement confirms that he purchased the Subject Vessel from MarineMax.  Am. Compl. ¶ 15; *see also* Exhibit A, *Purchase Agreement*.  A mere purchase through an authorized dealership does not establish privity.  *See David v. Amer. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1322 (S.D. Fla. 2009).  Nor does any warranty work or support provided by either Boston Whaler or MarineMax retroactively establish contractual privity related to the purchase of the Subject Vessel, as the relevant inquiry is if Plaintiff bought the Subject Vessel from the defendant.  Neither Boston Whaler nor Mercury were involved in the sale or delivery of the engines to Plaintiff, and there

are no allegations that either Boston Whaler or Mercury initiated contact with Plaintiff or made any direct representations to the Plaintiff about the Subject Vessel prior to or at the time of sale.

Thus, given the absence of privity of contract between Plaintiff and either of Boston Whaler or Mercury, Plaintiff cannot maintain claims for breach of implied warranty or rescission and revocation.

Thus, given the absence of privity of contract between Plaintiff and Boston Whaler, Plaintiffs' claims for Breach of Express Warranty, pursuant to both the Magnuson-Moss Act and Florida law (Counts I and II), fail to state a claim and should be dismissed.

## B. There is No MarineMax Warranty

As represented in the Purchase Agreement submitted herewith, MarineMax did not provide any written warranty to Plaintiff in the sale of the Vessel. Moreover, MarineMax fully and properly disclaimed any and all warranties in the Purchase Agreement. There is simply no basis for this claim against MarineMax and it should be dismissed with prejudice.

A seller is entitled to exclude warranties, both express and implied, at the time of sale. *See Fla. Stat.* 672.316; *Ocana,* 992 So. 2d at 324 (finding that clear and conspicuous disclaimer of all warranties by dealership combined with lease of vehicle in "as is" condition foreclosed breach of express and implied warranties claims against dealer). In order for the disclaimer in the Purchase Agreement to properly effectuate disclaimer of all warranties, it must satisfy two factors: (1) whether the particular disclaimer provision used the word 'merchantability'; and (2) whether the disclaimer provision is "conspicuous." The Warranty Disclaimer in the Purchase Agreement satisfies both factors.

In bold-face capital letters immediately above Plaintiff's signature, the front page of the Purchase Agreement includes a reference to the additional terms and conditions of the sale on the

reverse side of the document: "**SEE THE REVERSE SIDE OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING LIMITATIONS OF WARRANTIES**." Ex. A at 1 (emphasis in original).  Again, in bold-face capital letters on the reverse side of the Purchase Agreement, MarineMax included a separate paragraph titled "**DISCLAIMER OF WARRANTIES**" (the "Warranty Disclaimer").  Ex. A at p. 2, ¶ 2 (emphasis in original).  The Warranty Disclaimer states that MarineMax's sale of the subject boat was "AS IS."  Ex. A at p. 2, ¶ 2.  In bold-face capital letters, the Warranty Disclaimer plainly disclaimed any and all warranties, including the implied warranty of merchantability, on behalf of seller MarineMax:

> **THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE,** *unless* **Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale. If Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale, than any implied warranties shall be limited in duration to the duration of Seller's written warranty or service contract.**

Ex. A at p. 2, ¶ 2 (emphasis in original).

The Warranty Disclaimer in the Purchase Agreement satisfies both requirements of a valid disclaimer.  First, a disclaimer provision must be "conspicuous."  Fla. Stat. §§ 671.201(10), 672.316.  Here, the reverse side Warranty Disclaimer constitutes a "conspicuous" disclaimer under Florida law.  Under nearly-identical facts, the Third District Court of Appeal determined that a reverse side warranty disclaimer, which appeared in all capital letters and was set forth in a separate paragraph titled 'Disclaimer of Warranties,' was conspicuous.  *Rudy's Glass Const. Co. v. E. F. Johnson Co*., 404 So. 2d 1087, 1090 (Fla. 3d DCA 1981).  The Third DCA found that "[t]he reference on the front of the document to terms and conditions stated on the back, when coupled with the separate paragraph titled, 'Disclaimer of Warranties,' and the contrasting type"

was conspicuous, and thus held the disclaimer was legally effective to exclude all warranties.  *Id.* at 1090.  Like the reverse side warranty disclaimer examined by the *Rudy's* court, the reverse side Warranty Disclaimer here is set forth in all capital letters in a separate paragraph entitled "Disclaimer of Warranties."  Ex. A at p. 2, ¶ 2.  Also like the two-page sale contract examined by the *Rudy's* court, the front page of the Sale Contract includes the following reference, in bold-face capital letters immediately above the signature, to the terms and conditions contained on the reverse side of the document: "**SEE THE REVERSE SIDE OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING LIMITATIONS OF WARRANTIES.**"  Ex. A at p. 1 (emphasis in original).

Second, a seller must use "the word 'merchantability' in order to effectively exclude an implied warranty of merchantability."  *McCormick Mach., Inc. v. Julian E. Johnson & Sons, Inc.*, 523 So. 2d 651, 654 (Fla. 1st DCA 1988).  Here, the second requirement of a valid disclaimer of the implied warranty of merchantability is satisfied because MarineMax included the word 'merchantability' in its Warranty Disclaimer.  Specifically, it states: "SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF . . . INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY."  Ex. A at 2 ¶ 2 (emphasis in original).

Here, MarineMax properly and conspicuously disclaimed all express and implied warranties, including the implied warranty of merchantability. The disclaimer states in pertinent part:

**DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE .**

Ex. A at 2. The disclaimer is conspicuously made in bold-faced type and all capital letters as required to be effective. Because the Warranty Disclaimer used the word 'merchantability', under Florida law the Warranty Disclaimer was effective to exclude the implied warranty of merchantability in the "AS IS" sale of the subject boat.

Thus, because there is no MarineMax warranty, Plaintiffs claims against MarineMax for Breach of Express Warranty, pursuant to both the Magnuson-Moss Warranty Act and Florida law (Counts 1 and II) must be dismissed.

### C.    The Incidents Alleged in the Amended Complaint Do Not Constitute Breaches of the Boston Whaler Warranty

Plaintiff makes conclusory assertions that Boston Whaler breached the terms of the Limited Warranty provided for the Subject Vessel. Plaintiff's claim fails, however, as the Limited Warranty explicitly excludes coverage for the steering mechanism and Plaintiff has alleged no failures other than that of the steering mechanism.

The Limited Warranty provides in relevant part that:

"This warranty also does not apply to the following items:
(2) Equipment or accessories which are not installed by Boston Whaler or *which carry their own individual warranties*, including but not limited to *engines, engine components*, batteries, propellers, controls, *steering mechanisms*, and electronics.

Ex. B (emphasis added). By its terms, the Limited Warranty clearly excluded the engine and steering mechanism from coverage.[3] Plaintiff's allegations all relate to the failure of the steering

---

[3] Additionally, the Limited Warranty includes a disclaimer of all other warranties, stating in all-capital letters that: "EXCEPT AS SET FORTH HEREIN, THERE ARE NO OTHER WARRANTIES EITHER EXPRESS OR IMPLIED PROVIDED BY BOSTON WHALER ON THIS BOAT.  ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDED IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY, ARE EXPRESSLY EXCLUDED." *See* Ex. B, p. 2.  As explained more fully in Section 5, *infra*, because this warranty disclaimer (1) is conspicuous; and (2) contains the word 'merchantability,' Boston Whaler has fully and properly disclaimed all other warranties, including all implied warranties. Plaintiff's claim for Breach of Implied Warranty against Boston Whaler fails for this reason, among others.

mechanism.  *See e.g.* Am. Compl. ¶ 2 ("Defendants manufactured, supplied, promoted, and sold a series of vessels known as a 35-foot Boston Whaler Outrage when they knew or should have known the Mercury joystick piloting the Verado outboard engine (steering mechanism) was defective…."); Am. Compl. ¶ 35 (Through a common and uniform course of conduct, Defendants acting individually and collectively through their agents and dealers failed to adequately disclose to Baker, a member of the consuming public, the fact that the steering mechanism was defective and would cease functioning with no warning.").  Moreover, Plaintiff specifically alleges that he received a Product Protection Plan from Mercury Marine.  *See* Am. Compl. ¶ 18 ("Along with the Purchase Agreement, MarineMax provided Baker with a copy of an express limited warranty by Boston Whaler and a Product Protection Plan and Benefits from Mercury Marine.").  Therefore, based upon the allegations in the Amended Complaint, Plaintiff's Count I and Count II fail to state a claim for relief against Boston Whaler.

### III.   Plaintiff Fails To State A Claim for Breach of Implied Warranty of Merchantability (Count IV)

Like his written warranty claims, Plaintiff's factual allegations fail to support a prima facie case for breach of implied warranty against any Defendant.  A plaintiff "cannot recover economic losses for breach of an implied warranty in the absence of privity." *Mesa v. BMW of N. Amer., LLC,* 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005).  *See also Bailey v. Monaco Coach Corp.,* 168 Fed. Appx. 893, 894 n.1 (11th Cir. 2006) ("Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty."); *West v. Caterpillar Tractor Co.,* 336 So. 2d 80 (Fla. 1976). Indeed, "[p]rivity is required even if suit is brought against a manufacturer." *Tolliver v. Monaco Coach Corp.,* No. 8:06-cv-856-T-30TGW, 2006 U.S. Dist. LEXIS 40007, at *4 (M.D. Fla. June 16, 2006); *Mesa,* 904 So. 2d at 459.  The requirement of privity under Florida law is equally applicable to implied warranty claims under the Magnuson

Moss Act or Florida statutes. *Ocana*, 992 So. 2d at 325; *Cerasani*, 916 So. 2d at 847 (the Magnuson Moss Act "does not supersede state law privity requirements for implied warranty claims, and pursuant to Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity") (citations omitted); *Gill v. Blue Bird Body Co., 147* Fed. Appx. *807, 810* (11th Cir. 2005).

### A.   Plaintiff Does Not and Cannot State a Claim For Breach of Implied Warranty Against Boston Whaler or Mercury Because No Privity Exists

Plaintiff does not and cannot state a cause of action for breach of an implied warranty under Federal or state law against Boston Whaler or Mercury because he lacks the requisite privity of contract.  Plaintiff did not purchase the Vessel directly from Boston Whaler and did not purchase the Engine directly from Mercury.  Plaintiff alleges that he purchased the Vessel and Engine from MarineMax. (Am. Compl. ¶ 9).  Absent any allegations of privity, Plaintiff fails to satisfy an "essential element" of a breach of implied warranty claim. Therefore, his breach of implied warranty claims against Boston Whaler and Mercury must be dismissed.  *Bailey*, 168 Fed. Appx. at 894 n.1 ("privity of contract is an essential element of a claim for breach of implied warranty").

Moreover, such a defect cannot be cured with additional pleading.  Thus, Plaintiff's claims for breach of implied warranty against Boston Whaler and Mercury should be dismissed with prejudice.

### B.   Plaintiff Cannot State a Claim for Breach of Implied Warranty Against MarineMax Because MarineMax Disclaimed All Warranties

As previously explained, MarineMax properly and conspicuously disclaimed all express and implied warranties, including the implied warranty of merchantability. The disclaimer states in pertinent part:

**DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE .**

Ex. A at 2. The disclaimer is conspicuously made in bold-faced type and all capital letters as required to be effective. Because the Warranty Disclaimer used the word 'merchantability', under Florida law the Warranty Disclaimer was effective to exclude the implied warranty of merchantability in the "AS IS" sale of the subject boat.

Thus, Plaintiffs claims against MarineMax for Breach of Implied Warranty (Count III) fail as a matter of law and must be dismissed.

### IV.   PLAINTIFF'S CLAIM FOR VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT FAILS TO STATE A CLAIM AGAINST ANY PARTY BECAUSE PLAINTIFF FAILS TO MEET THE HEIGHTENED PARTICULARITY STANDARD REQUIRED BY RULE 9(B).

To state a claim for damages under the FDUTPA, a plaintiff must allege facts showing "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006). A deceptive act is one that is "likely to mislead" consumers, whereas an unfair act is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. Allegations are sufficient when they go beyond intentional breach of contract claims and are not merely conclusory. *HW Aviation LLC v. Royal Sons, LLC*, 2008 WL 4327296, at *5–6 (M.D.Fla. Sept. 17, 2008).

Because it is a Florida statute, Florida law is controlling as to the interpretation of FDUTPA. "Most courts construing claims alleging violations of the Federal Deceptive Unfair Trade Practices Act or its state counterparts have required the heightened pleading standard

requirements of Rule 9(b)." *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1322 (M.D. Fla.2002).   Indeed, most courts in this District have recognized that the heightened pleading standards of Rule 9(b) apply to claims brought under the FDUTPA. *See Blair v. Wachovia Mortgage Corp.*, 5:11–cv–566–Oc–97TBS, 2012 WL 868878, at *3–4 (M.D. Fla. Mar. 14, 2012) (finding that "where the gravamen of the claim sounds in fraud, as here, the particularity requirement of Rule 9(b) applies to all claims that sound in fraud" regardless of whether those claims are grounded in state or federal law); *Florida Digital Network, Inc. v. Northern Telecom, Inc.*, No. 6:06–cv–889–Orl–31JGG, 2006 WL 2523163, at *5 (M.D. Fla. Aug. 30, 2006); *Nationwide Mut. Ins. Co. v. Ft. Myers Total Rehab, Inc.*, 657 F.Supp.2d 1279, 1290 (M.D. Fla. 2009) (doubting whether the specificity requirements of Rule 9(b) apply to FDUPTA claims but recognizing that the majority view in the District is that specificity is required).

Pursuant to Rule 9(b), Federal Rules of Civil Procedure, a complaint alleging fraud must "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) does not abrogate the notice pleading standard of Rule 8, but

> it plainly requires a complaint to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of such statements and the person responsible for making ... them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). The Eleventh Circuit has commented that Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral or fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations and quotation marks omitted). This

- 16 -

particularity requirement is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Solutions, Inc*., No. 10–15406, 2012 WL 555200, at *4 (11th Cir. Feb. 22, 2012) (internal citations omitted). Additionally, the plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." *Brooks v. Blue Cross and Blue Shield of Fla.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (citing *Midwest Grinding [Co. v. Spitz]*, 976 F.2d 1016, 1020 (7th Cir. 1992)).

Though Plaintiff has amended its complaint in an attempt to strengthen its allegations, he still fails to adequately plead his FDUTPA claim against any Defendant.

As to Boston Whaler and Mercury Marine, Plaintiff continues to attempt to conflate the Defendants in order to avoid dismissal.  The Amended Complaint states that Baker had a conversation with "John Foster, a representative of Boston Whaler and/or Mercury Marine" and that "Mr. Foster's statements were confirmed in a phone call from another representative of Boston Whaler and/or Mercury Marine." It is both confusing and nonsensical to lump Defendants together in this was - Boston Whaler and Mercury Marine are separate entities which manufacture and sell different products and services.  Moreover, the statements attributed to Mr. Foster were not untrue.  Plaintiff pleads that Mr. Foster said that: "(1) it was a high priority to make Baker's boat work properly; (2) they had finally determined the root cause of the problems; (3) the re-designed parts for the ultimate fix were being sent out; and (4) Baker's boat would be given priority." Am. Compl. ¶ 23.  Plaintiff goes on to plead that, in fact, the promised replacement of parts was made.  *See* Am. Compl. ¶ 26  ('Following this meeting, Baker took his boat back to MarineMax and was told that new parts had been received and the defective parts

- 17 -

would be replaced with working parts") and ¶ 27 ("Nonetheless, the vessel failed again *after this*

*replacement*") (emphasis added).   According to Plaintiff's own allegations, whichever

Defendant made the statements attributed to Mr. Foster, did, as it represented, make it a priority

to provide and install replacement parts in an attempt to address Plaintiff's issues.  That Plaintiff

was dissatisfied with the result does not render untrue the statements made that the installation of

replacements parts in Plaintiff's vessel was a priority.

Plaintiff's FDUTPA allegations against MarineMax also conflate the actions of the

separate Defendants in an attempt to avoid dismissal.  Plaintiff alleges that MarineMax "made

material misrepresentations and omissions in an effort to induce Baker to enter into a purchase

agreement to purchase the '35 Boston Whaler Outrage."   Am. Compl. ¶ 75. But the

misrepresentations and omissions that Plaintiff refers to involve a recall notice issued by

Mercury Marine; not MarineMax.   In its General Allegations, Plaintiff alleges that "*The*

*Defendants* prior to, or at the time of, the delivery of the vessel, failed to disclose to Baker there

had been a Notice of Recall of the steering mechanism under the U.S. Federal Boat Safety Act

some eight (8) days before the delivery of the vessel to him." Am. Compl. ¶ 19.  But MarineMax

was the only Defendant with whom Plaintiff has alleged it interacted prior to the purchase of the

Subject Vessel and MarineMax is the entity that sold and delivered the Subject Vessel to

Plaintiff.  *See* Am. Compl. ¶ 9 ("MarineMax sold the vessel at issue here to Plaintiff.").  Plaintiff

goes on to allege that "[T]hree weeks after delivery of the vessel *Mercury Marine* sent Baker the

recall Notice."   Am. Compl. ¶ 20 (emphasis added).  Once again, MarineMax and Mercury

Marine are separate entities that sell different products - MarineMax is a boat supplier and

Mercury Marine is an engine manufacturer.  Plaintiff's allegations are unclear and confusing and

fail to allege a claim against MarineMax.

301363050 v1

Plaintiff's allegations fall short of the basic notice pleading standards required by Rule 8, and fall grossly short of the heightened requirements of Rule 9(b).  Therefore, Plaintiff's claims for violation of FDUTPA against Defendants fail to state a claim and must be dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request this Court to (1) dismiss Plaintiff's Amended Complaint in its entirety as to MarineMax and Boston Whaler and (2) dismiss Count III for Breach of Implied Warranty and Count IV for Violation of Florida's Deceptive and Unfair Trade Practices Act against Mercury, and grant any and all other relief this Court may deem just and proper.

Dated:  January 5, 2018

Respectfully submitted,

 */s/  Christina M. Paul*
Christina M. Paul, Esq.
Florida Bar No. 596876
christina.paul@klgates.com
Caitlin A. McCullough, Esq.
Florida Bar No. 114432
caitlin.mccullough@klgates.com
**K&L Gates LLP**
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 3900
Miami, FL 33131-2399
Telephone:      305-539-3300
Facsimile:      305-358-7095
*Counsel for Defendants*

301363050 v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties on the below service list on this 5th day of January 2018.

_/s/  Christina M. Paul_

### Service List
### Case No. 2:17-cv-00572-Chappell/McCoy

Amanda Ellen B. Clay, Esq.
mclay@slk-law.com
**Shumaker, Loop & Kendrick, LLP**
101 E. Kennedy Boulevard, Suite 2800
Tampa, FL 33602
Telephone:     813-676-7233
Facsimile:     813-229-1660
***Counsel for Plaintiff***

301363050 v1