**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

**GLENN R. BAKER,**

       **Plaintiff,**                         **CASE NO. 2:17-cv-00572-UA-MCM**

**v.**

**BRUNSWICK CORPORATION, a
Delaware corporation, MARINEMAX
EAST, INC., a Delaware corporation, and
BOSTON WHALER, INC., a Delaware
corporation,**

       **Defendants.**

_____/

**RESPONSE TO DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

      Plaintiff, Glenn R. Baker ("Baker"), hereby responds to Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 39) and says:

**I.   Introduction**

      Baker purchased his 35-foot Boston Whaler Outrage ("the vessel") from MarineMax East, Inc. ("MarineMax"), a dealer, representative, and agent of Brunswick Corporation ("Brunswick") and Boston Whaler, Inc. ("Boston Whaler") on or about May 8, 2015 for approximately Five-Hundred Thousand Dollars ($500,000.00). Doc. 35 at ¶ 18.

      Each of the Defendants prior to, or at the time of, the delivery of the vessel, however, failed to disclose to Baker there had been a Notice of Recall of the vessel's steering system under the U.S. Federal Boat Safety Act some, eight (8) days before the delivery of the vessel to Baker. *See* Doc. 35-4. Initially the recall notice stated that the issue was a manufacturing defect in the engine's steering cylinder sensor which could lead to a loss of steering. *See id.* In a later letter

from Brunswick to the Plaintiff, Brunswick stated, instead, that the problem was with the power steering pump intermittently shutting down. *See* Doc. 35-5. All Defendants had notice that the steering system was defective, that it would cease functioning without warning in the open seas, and of the recall at the time of Baker's purchase but did not notify Baker until three weeks after purchase and delivery of the vessel. *See* Doc. 35 at ¶ 26.

In or about December 2015, the defective steering system in the vessel failed in open waters and has continuously failed despite repeated attempts to repair the defective system with participation by all three Defendants. *Id.* at ¶ 27. MarineMax, as an agent and authorized dealer of Brunswick and Boston Whaler, undertook the duty of repairing the vessel under warranty on several occasions over a two-year period. *Id.* at ¶ 28. The Defendants refer to two years of ownership by Baker, but fail to acknowledge the amount of time during those two years that Baker was unable to use the vessel because it was disabled and/or being repaired.

Baker had the vessel serviced for repairs by one or more of the Defendants or at the direction of Brunswick and MarineMax more than five times between December 31, 2015 and June 14, 2017 including: January 4, 2016; May 27, 2016; October 27, 2016; October 31, 2016; February 27, 2017 (service not completed until April 3, 2017 – over a month after being brought in); and April 21, 2017. *Id.* at ¶ 29. On June 14, 2017, Baker was told by John Foster, a representative of Boston Whaler and/or Brunswick, that: (1) it was a high priority to make Baker's boat work properly; (2) they had finally determined the root cause of the problems; (3) the re-designed parts for the ultimate fix were being sent out; and (4) Baker's boat would be given priority. *Id.* at ¶ 30.  Mr. Foster's statements were confirmed in a phone call from another representative of Boston Whaler and/or Brunswick in Wisconsin. *Id.* at ¶ 31. Notwithstanding

those representations, none of the statements turned out to be true at the time they were made. *Id.* at ¶ 32.

Following his conversation with John Foster, Baker took his boat back to MarineMax for the 8th time, and was told by MarineMax representatives that new parts had been received and the defective parts would be replaced with working parts. *Id.* at ¶ 33. Nonetheless, the vessel failed again in the middle of open waters after this replacement, with Baker's family on board. *Id.* at ¶ 34. Baker, unwilling to expose his family and friends to further risk because of the continuing unresolved issues with the steering system and the continuous breakdowns in the middle of transit through the Gulf of Mexico, Baker finally returned the vessel to MarineMax in August 2017 and asked for a rescission of the sale and related damages. *See* Doc. 1-1; Doc. 35 at ¶ 35. Baker noted that every scheduled trip outside the Sanibel area with the vessel over the 26 months he had owned it was disrupted by steering failures. Doc. 1-1 at p. 1.

There is no dispute that Brunswick and Boston Whaler issued written warranties for the vessel to Plaintiff – yet these defendants seek to avoid liability under those warranties due to allegations of a "lack of privity" between them and Baker. MarineMax sold the vessel to Baker, provided him with warranty documentation from both Brunswick and Boston Whaler, and delivered the vessel to Baker. When Baker reported a problem with the vessel, MarineMax undertook the work at the behest of Defendants to try and solve the problems and fix it under the warranties. Now, MarineMax seeks to avoid liability by asserting that it "disclaimed" all warranties at the time of sale even though it attempted the repairs purportedly under the warranties.

This is a civil action for damages concerning a defective steering system of the purchase of a 2015 Boston Whaler 35-foot Outrage by Baker. Doc. 35 at ¶ 1. Defendant, Boston Whaler,

manufactured the vessel. *Id.* at ¶ 8. The Mercury Marine Division of Defendant Brunswick manufactured certain parts of the vessel, including its engine, which were installed by Boston Whaler. *Id.* at ¶ 10. Both Brusnwick and Boston Whaler made marketing representations in their literature, relied upon by Baker, that the vessel's steering system was designed to provide "effortless docking and ultimate confidence when cruising even the roughest ocean waves." *Id.* at ¶ 162. Defendant, MarineMax, acting as an authorized dealer and agent of Boston Whaler and Brunswick sold the vessel to Plaintiff. *Id.* at ¶ 12.

At the time of sale MarineMax, as Boston Whaler and Brunswick's authorized retailer/dealer, provided Baker with an executed Purchase Agreement on behalf of itself, Boston Whaler, and Brunswick. *See* Doc. 35-1 at p. 2. The Purchase Agreement identifies the manufacturer as "Boston Whaler Mercury."[1] *See id.* at p. 1. The back of the Purchase Agreement reads, in part: "MANUFACTURER'S WARRANTY. The boat, motor and accessories sold pursuant to this agreement are only subject to applicable manufacturer's warranties, if any, except, as otherwise expressly provided in this agreement." *See id.* at p. 3. Along with the purchase agreement, MarineMax provided Baker with a copy of an express limited warranty by Boston Whaler and a Product Protection Plan and Benefits document from Brunswick. *See* Doc. 35-2 and 35-3.

As noted above, a voluntary government recall had been issued eight days prior to Plaintiff's purchase of the vessel, yet none of the Defendants disclosed there were issues with the steering system on the vessel, or that there was a recall or was going to be a recall until three weeks after Plaintiff purchased the vessel. *Id.* at ¶ 23. Problems with the steering system caused Baker to learn of the recall, Defendants were given multiple opportunities to correct the problem with the steering mechanism under certain warranties, but have been unsuccessful in repairing or

---

[1] "Mercury" or "Mercury Marine" is a division owned and operated by Defendant Brunswick Corporation.

solving the issues. *Id.* at ¶¶ 29-35. After at least ten attempts over two years, Defendants' warranties are useless and Plaintiff is therefore entitled to relief. *Id.*

The arguments in Defendants' motion would seem to suggest the Defendants can avoid liability for their representation, misrepresentations, and faulty repair work and as successors render all warranties meaningless. This cannot be the intent or purpose of Federal or Florida consumer protection laws, which were designed in order to protect the consumer, in this case, Baker. Manufacturers and sellers should not be able to dodge warranty obligations simply by putting a third-party agent between themselves and the buyer. *See, e.g., Mesa v. BMW of N.A., LLC*, 904 So. 2d 450, 457–58 (Fla. 3d Dist. App. 2005) ("If Mesa could not enforce the warranty against BMWNA, South Motors, or BMW Financial Services, the manufacturer's promises and the vehicle's warranty would be meaningless. The Defendants positions are contrary to the plain language of the [Magnuson-Moss Warranty Act] and its legislative intent to protect consumers.").

Under Florida law, if a repair-or-replace limited warranty fails of its essential purpose the consumer may seek to recover any remedy provided by Florida law. A repair-or-replace warranty fails of its essential purpose if the warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts. Doc. 35 at ¶ 38. Here, all three Defendants were given the opportunity to repair the defective steering system several times over the course of two years and did not do so. *Id.* at ¶ 39. The vessel remains in a condition unfit for Plaintiff's use. *Id.* at ¶ 40.

Thus, the limited warranties provided by all Defendants failed to serve their essential purpose. *Id.* at ¶ 41. Through a common and uniform course of conduct, Defendants acting individually and collectively through their agents and dealers, failed to adequately disclose to

Baker, prior to his purchase a member of the consuming public, the fact the steering system was defective and would cease functioning with no warning in the middle of transit through open waters. *Id.* at ¶ 42.  Indeed, they represented in their marketing materials the steering system was the state of the art. *Id.* at ¶ 162.

At all times relevant hereto Defendants, through their agents, distributors, servants and/or employees, engaged in the design, manufacture, marketing, sale and delivery of the 35-foot Boston Whaler Outrage nationally. *Id.* at ¶ 46. At all relevant times, Defendants controlled the design, manufacture, marketing, and sale of the 35' Boston Whaler Outrage, its parts, and its accessories. *Id.* at ¶ 47. Defendants however failed to disclose at the time they marketed, warranted, sold and/or delivered the 35' Boston Whaler Outrage to Baker the steering system was defective. *Id.*at ¶ 48.

The Owner Manual provided to Baker and the interval service policies followed by the dealers in effect during the period relevant to this action, were wholly inadequate to alert Baker to the increased costs, servicing requirements and duration and limitations associated with the use of the vessel. *Id.* at ¶ 49. Defendants knew, or should have known, the design, materials and workmanship utilized for the steering system were insufficient to handle the use of the vessel in conditions that characterize everyday use on the water in the United States and internationally, contrary to the advertisement brochure, entitled "Boston Whaler 2015: The Unsinkable Legend", which stated that the vessel's steering system was designed to provide "effortless docking and ultimate confidence when cruising even the roughest ocean waves." *Id.* at ¶¶ 50, 162.

Defendants breached their express and implied warranties, as they did not deliver a vessel having the characteristics, uses and benefits portrayed by Defendants. *Id.* at ¶ 51. Defendants' failure to disclose the known defects with the steering system renders the warranty objectively

and materially misleading. Defendants knew of, or recklessly disregarded, the fact that the steering system and vessel were incapable of achieving the use for which they were intended and as advertised and the danger a shutdown of the steering system created in open waters. Therefore, to the extent the warranty is so limited, Defendants have engaged in an unfair and deceptive warranty practice. *Id.* at ¶ 52.

## II. Standard of Review

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). "When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff." *Bilotta v. Citizens Info. Associates, LLC*, 8:13-CV-2811-T-30, 2014 WL 105177, at *1 (M.D. Fla. Jan. 10, 2014) (*citing Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)).

## III. Argument

### A. All counts are plead with the requisite specificity.

Defendants argue, once again, they cannot formulate an answer to the Second Amended Complaint (Doc. 35) (the "SAC") because it is a "variant of" a "shotgun pleading." Doc. 39 at p. 6. The SAC has, as requested by Defendants in their prior motions, split up the counts so that each count is against only a single defendant. Defendants suggest that because the general factual allegations made in the SAC apply to all counts they cannot form an answer. It is not uncommon that the same facts will support multiple counts in a complaint, and such a characteristic does not

require dismissal. *See Abromats v. Abromats,* 16-CV-60653, 2016 WL 4917153, at *2 (S.D. Fla. Sept. 15, 2016) (citing *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996)). In fact, for this court to have subject matter jurisdiction over all of the claims in this action, they must arise from the same nucleus of operative facts. *See, e.g., Lucero v. Trosch,* 121 F.3d 591, 597 (11th Cir.1997) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724–25, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

Furthermore, "general references to actions by all defendants are not always grounds for dismissal." *Ferguson,* 2013 WL 12334214, at *4 (citing *Briggs v. Johnson*, 274 Fed.Appx. 730 (10th Cir. 2008)).

> The complaint in *Briggs* contained multiple counts against multiple defendants, but the court held that the context of the acts, in conjunction with the facts alleged, provided sufficient notice to the individual defendants of the claims against them. *Id.* at 736. The court looked at the complaint in "its entirety" and held that it met the pleading standards. *Id.* at 737.

*Ferguson v. Bd. of County Commissioners of Sierra County,* CV 11-1001 WPL/CG, 2013 WL 12334214, at *4 (D.N.M. Apr. 2, 2013). Here, as in *Ferguson* and *Briggs*, a review of the SAC and Defendants' motion to dismiss establishes that they most certainly have adequate notice of the claims against them. Notably, while Defendants have complained from the beginning about being "lumped together" in the complaints, they have jointly filed this motion to dismiss and fail to break up the arguments according to counts or defendants. If Defendants see no need to separate themselves it is unclear why they would need the Plaintiff to do so, or even think him capable of doing so prior to discovery responses.

It is also unreasonable for the Defendants to expect Plaintiff to know exactly which company each representative was acting on behalf of, or the extent of the Defendants' inter-business relationships regarding the manufacturing, marketing, and sale of the vessel. This is

something that requires discovery responses as Defendants are exclusively in possession of this information and their respective obligations and liabilities as between them and the consuming public. Plaintiff is not required to make these distinctions in its complaint. *See Dorseli v. Gonzalez,* 2:17-CV-37-FTM-99CM, 2017 WL 4286482, at *3 (M.D. Fla. Sept. 27, 2017) (citing *Kyle K. v. Chapman,* 208 F.3d 940, 944 (11th Cir. 2000)). Defendants' motion on this basis should be denied accordingly. If, however, the Court finds that Plaintiff's allegations are still not specific enough under the Rules, Plaintiff respectfully requests leave to amend his complaint after he has an opportunity to review Defendants' discovery responses.

**B. Counts I through VI should not be dismissed.**

First, Defendants argue that Plaintiff "does not state a claim for breach of written warranties" in reference to Counts I through VI of the SAC. Doc. 29 at p. 6. None of Counts I though VI are "claims for breach of written warranties." Rather, Counts I through III allege violations of Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) ("MMWA") and Counts IV through VI allege breach of express warranty.

*1. Counts II, III, V and VI should not be dismissed for lack of privity.*

Defendants argue that these counts, for violation of the MMWA and breach of express warranty, against Brunswick and Boston Whaler should be dismissed for lack of privity.[2] However, multiple courts have held that privity is not required for express warranty claims under the MMWA or Florida law. *See Rentas,* 936 So. 2d at 751; *Fischetti v. Am. Isuzu Motors, Inc.,* 918 So.2d 974 (Fla. 4th DCA 2005); *Cerasani v. Am. Honda Motor Co.,* 916 So.2d 843 (Fla. 2d DCA 2005), review granted, 925 So.2d 1029 (Fla. 2006); *Mesa,* 904 So.2d 450. "The only limitation is that the buyer with whom the bargain was made must have been 'a buyer for

---

[2] Defendants concede privity with MarineMax. Doc. 39 at p. 9.

purposes other than resale.'" *Id.* Here, Baker was clearly the end-user of the vessel and not purchasing it for resale.

The Eleventh Circuit recently confirmed there is no privity requirement for express warranty claims under Florida law. *Godelia v. Doe 1,* 881 F.3d 1309, 1321 (11th Cir. 2018). Defendants argue that the *Godelia* case only adopts the "*Wrigley* exception" which Defendants claim does not apply here. In *Godelia* the Court said "Our review of Florida law reveals no clear rule about whether privity is required in every Florida express warranty claim." *Id.* There is no mention of a "*Wrigley* exception" – indeed, it would be an exception without a rule. The Eleventh Circuit does cite to *Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336, 1342–43 (S.D. Fla. 2009) (recognizing that privity may not be required for all express warranty claims), but there is no indication the court is adopting the reasoning from that case or creating an "exception" based on the case.

Furthermore, Defendants attempt to distinguish *Wrigley* and by implication *Godelia*, because, in *Wrigley*, the consumer bought a pack of gum from a grocery store, "not a middle man." However, the Court in *Godelia* makes no mention of this. The consumer in *Godelia* obtained a prescription for the product and then purchased it from a facility authorized by the manufacturer to sell the product – not directly from the manufacturer. The same is true here. Baker bought a boat from an agent authorized dealer for Boston Whaler and Brunswick to sell their boats. It is difficult to see how MarineMax could be considered a "middle man" requiring privity to be proven when the grocery store in *Wrigley* and facility in *Godelia* were not – all three sold the manufacturers' products to an end user. In fact, Baker had more contact with Brunswick and Boston Whaler than the plaintiff had with the manufacturer in *Wrigley*. Thus, under *Godelia*, it would be error to dismiss Baker's MMWA or express warranty claims for lack of privity.

Even if privity was required, it can arise from either direct contractual privity, indirect privity through acts of a party's agents, or through direct contacts between plaintiff and defendant intended to induce the sale of the products. *See, generally, Borchardt v. Mako Marine Int'l, Inc.*, Case No. 08-61199-CIV, 2011 WL 2084177, *1-2 (S.D. Fla. May 24, 2011). Plaintiff has alleged that Defendants have acted in concert through the entire transaction, thereby creating both agent contacts and direct contacts between Plaintiff and each of the Defendants in order to persuade Plaintiff to purchase the vessel. Plaintiff has specifically alleged direct interaction with agents of Boston Whaler and Brunswick regarding the warranty work on the vessel. *See* Doc. 18 at ¶¶ 23-24. In *Cedars of Lebanon Hosp. Corp. v. European X–Ray Distribs. of Am., Inc.,* 444 So.2d 1068 (Fla. 3d DCA 1984), the Florida Third District Court of Appeal found that privity existed between a manufacturer and a buyer, notwithstanding that the seller was a third-party distributor, where the manufacturer's representative made direct contact with the buyer and where the buyer relied on representations directly from the manufacturer's representative in purchasing the product from the distributor. *Id.* at 1072. *See also ISK Biotech Corp. v. Douberly,* 640 So.2d 85, 87-88 (Fla. 1st DCA 1994); *Smith v. Wm. Wrigley Jr. Co.,* 663 F.Supp.2d 1336, 1341–42 (S.D.Fla.2009). In this case, as in *Godelia,* Plaintiff has alleged privity with all Defendants and therefore, Counts II,  III, V and VI should not be dismissed.

### 2.   *Plaintiff has stated claims for breach of express warranty against MarineMax.*

Defendants next argue that Counts I and IV against MarineMax should be dismissed because it did not provide a written warranty. However, MarineMax acted as an agent and authorized dealer for both of the other Defendants when it undertook to not disclose the problem with the steering mechanism or the recall, attempted to perform warranty and repair services on

the vessel on behalf of the Defendants, thus, MarineMax should be estopped from arguing that it is not bound by the written warranties.

> The basic elements of promissory estoppel are set forth in Restatement (Second) of Contracts § 90 (1979), which states:
>
> > (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*W.R. Grace and Co. v. Geodata Services, Inc.,* 547 So. 2d 919, 924 (Fla. 1989). MarineMax represented to Plaintiff that it would repair the vessel pursuant to the recall and warranties. Baker relied on these representations when he left the vessel in MarineMax's care for such repairs and accepted delivery on an allegedly repaired boat numerous times thereafter. Baker's reliance on such representation caused him to place himself and his family in potential risk in open waters when the steering system failed and shut down, resulting in additional monetary costs related to the additional breakdowns.

Furthermore, MarineMax provided express warranties under Florida law, even if those warranties were not written. Pursuant to Fla. Stat. § 672.313, an express warranty may be created by the following:

> > (a)   Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> > (b)   Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> > (c)   Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

At the time of the sale, MarineMax represented to Baker that the Outrage was of the highest quality and would perform as described in the advertising literature. At that time, all three Defendants knew or should have known that this was not true because of problems with the steering system and a recall was going to be or had already been issued. Again, Plaintiff should be permitted to conduct discovery to flesh out the underlying details of these representations and this claim should not be dismissed. As it stands, the SAC has sufficiently plead a claim for breach of express warranty by MarineMax and Counts I and IV should not be dismissed. To the extent the Court finds the allegations insufficient to state such a claim, Plaintiff requests the opportunity to replead same after he has an opportunity to review Defendants' discovery responses.

### 3. *Plaintiff has alleged breaches of the Boston Whaler Warranty.*

Defendants argue that Counts I and IV against Boston Whaler should be dismissed because of exclusionary language in the warranty. Under Florida law, Brunswick and Boston Whaler breached the express repair-or-replace limited warranties issued to Plaintiff.

> [I]n order to establish that a warrantor breached a repair-or-replace limited warranty, a plaintiff must prove that: (1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given to the warrantor within a reasonable time after the defect was or should have been discovered; and (3) the warrantor was unable to repair the defect after a reasonable time or a reasonable number of attempts.

*Bailey v. Monaco Coach Corp.,* 350 F. Supp. 2d 1036, 1043 (N.D. Ga. 2004), *aff'd*, 168 Fed. App'x. 893 (11th Cir. 2006)(unpublished) (citing Fla. Stat. Ann. § 672.607(3)(a); *Royal Typewriter Co., a Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.,* 719 F.2d 1092, 1103 (11th Cir.1983); *General Matters, Inc. v. Paramount Canning Co.,* 382 So.2d 1262, 1263–64 (Fla. 2d DCA 1980); 15 U.S.C. § 2304(b)(1)).

Plaintiff has specifically alleged that Boston Whaler accepted responsibility for the defect under its warranty. Thus, Boston Whaler should be estopped from arguing now that the warranty did not cover that issue. Furthermore, as alleged multiple times in the SAC, all Defendants acted in concert with each other throughout this process. Plaintiff should not be required to relinquish potential claims against any one defendant before it has conducted discovery.

**C. Counts VII, VIII, and IX should not be dismissed for failure to state a claim.**

Counts VII, VIII and IX allege breach of implied warranty by all Defendants. Again, Defendants argue that this claim should be dismissed as against Boston Whaler and Brunswick because of a lack of privity. As previously discussed, Plaintiff has alleged privity between himself and all three Defendants through both agency and direct contacts which were designed to induce him to purchase the vessel while concealing the known defect.

Defendants also argue that the claim for breach of implied warranty against MarineMax should be dismissed because MarineMax disclaimed all warranties. As previously discussed, MarineMax should be estopped from making this argument because it undertook to do warranty work on behalf of the other two Defendants. If MarineMax did not believe it was responsible for the warranties, it should have told that to Plaintiff and sent him to one of the other Defendants rather than allow him to rely on MarineMax's representations that it was responsible for and would handle the warranty repairs.

**D. Plaintiff's claims for violation of FDUTPA have been plead with sufficient specificity.**

Defendants then argue that Plaintiff failed to plead the facts supporting his claims under FDUTPA with the specificity required by Rule 9. Again, this argument was made regarding the first Complaint and appears contradicted by Brunswick's Answer to the original Complaint, filed

by the same counsel. *See, e.g., United States v. Wells Fargo Bank, N.A.,* 972 F.Supp.2d 593, 616 (S.D.N.Y.2013) ("Whether a complaint complies with ... Rule [9(b) ] ... depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties[,] **and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading**.") (emphasis added). The SAC provides additional specificity regarding the misrepresentations, so if Brunswick was able to answer the original Complaint it should certainly have been able to answer this one. However, even without that apparent contradiction, the argument fails.

First, "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA," *Zike, LLC v. Catalfumo,* Case No. 12–80236–CIV, 2013 WL 12080225, *7 (S.D. Fla. Feb. 22, 2013) (citing G*uerrero v. Target Corp.*, –––– F.Supp.2d ––––, –––– (S.D. Fla. Sept. 4, 2012); *Galstaldi v. Sunvest Comtys.* USA, LLC, 637 F.Supp.2d 1045, 1056 (S.D. Fla. 2009)); *State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.,* 869 So.2d 592, 598 (Fla. 1st DCA 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). Thus, a "FDUTPA claim need not comply with Rule 9(b)." *Zike,* 2013 WL 12080225 at *7.

Second, Plaintiff's FDUTPA claim is largely based on fraudulent omissions.

Rule 9(b) does not require fraud-by-omission claims to "specify the time, place, and specific content of an omission as precisely as would a ... false representation claim." *Falk v. Gen. Motors Corp.,* 496 F.Supp.2d 1088, 1098–99 (N.D.Cal. 2007). Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission.

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.,* 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009).

Plaintiff has specifically alleged the omissions regarding defects with the steering system and the recall of the steering system and the warranties at issue here. *See generally Keegan v. American Honda Motor Co., Inc.,* 838 F.Supp.3d 929 (C.D. Cal. 2012) (holding that car buyers' allegations that they purchased vehicles with understanding that they would function as warranted when sold, that manufacturer had specific information about a defect in vehicle's rear suspension that caused uneven and early wear in tires, that manufacturer did not disclose that information, and that buyers had repeated interactions with dealers over time, were sufficient to plead causation with particularity, as required to state putative class claims under Florida, Idaho, Montana, New York, and North Carolina consumer protection statutes).

Plaintiff has also alleged specific affirmative statements on June 14, 2017 by John Foster at Boston Whaler's factory. *See* Doc. 35 at ¶ 30. This allegation of who, what, where, and when, is more than sufficient to satisfy Rule 9. *See, e.g., Odom v. Microsoft Corp.,* 486 F.3d 541, 555 (9th Cir.2007) (finding that the plaintiffs' allegations satisfied Rule 9(b) because, *inter alia*, the defendants "provided no reason to believe that [they] [would] be hampered in their defense" by the plaintiffs' "inability to name the particular employees" involved); *Morrison v. Wells Fargo Bank, N.A.,* 30 F.Supp.3d 449, 457 (E.D.Va.2014) (finding that the plaintiff's allegations satisfy Rule 9(b) because, while the plaintiff "did not identify the name of the ... employee with whom he spoke, he identifie[d] the employee as an agent of [the defendant]"); *Stumm v. BAC Home Loans Serv., LP,* 914 F.Supp.2d 1009, 1013–14 (D.Minn.2012) ("The failure to provide the name of an employee who made an allegedly fraudulent statement is not necessarily fatal, as long as the complaint pleads sufficient facts to allow the employer readily to identify the employee who spoke to the plaintiff."); *Pagan–Negron v. Wells Fargo, N.A.,* No. 11–CV–398, 2011 WL

10604778, at *6 (W.D.Tex. Sept. 6, 2011) ("Plaintiff does not know the name of the person who made the representation over the phone, but that should not be fatal to her claim.").

While it is likely that there is much more evidence to support the FDUTPA claim, that evidence is in the possession of Defendants and Plaintiff is entitled to conduct discovery to obtain that evidence. *See, e.g., In re Catfish Antitrust Litigation,* 826 F. Supp. 1019 (N.D. Miss. 1993)(holding that some relaxation of rule requiring that fraud be pled with particularity is appropriate in instances of alleged corporate or business fraud in which information is in defendant's hands or control); *Chisholm v. Foothill Capital Corp.,* 940 F.Supp. 1273 (N.D. Ill. 1996) (holding that, even in fraud cases, there is exception to requirement that allegation be pleaded with particularity in complaint when facts on which allegations are based are in defendant's control).

If, however, the Court finds that Plaintiff's allegations are not specific enough under the Rules, Plaintiff respectfully requests leave to amend these claims after he has an opportunity to review Defendants' discovery responses.

### E.  Plaintiff's claims against Boston Whaler for violation of Fla. Stat. §§ 817.40(5) and 817.41(1) have been plead with sufficient specificity.

Defendants then argue that Plaintiff failed to plead the facts supporting his claims for false marketing/promotion with the specificity required by Rule 9.

Plaintiff has identified the exact statements made by Boston Whaler in their marketing materials. *See* Doc. 35 at ¶ 162. Boston Whaler is in a much better position to know when and by whom these marketing materials were made than Plaintiff is. It borders on absurd for Boston Whaler to suggest that it cannot determine which of its own marketing materials regarding the 2015 Outrage contains the statement that the Outrage and its steering system were designed to

provide "effortless docking and ultimate confidence when cruising even the roughest ocean waves."

Baker has provided enough specificity for Boston Whaler to respond to this allegation, thus, Count XIII should not be dismissed. *See, e.g., Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir.2007) (finding that the plaintiffs' allegations satisfied Rule 9(b) because, *inter alia*, the defendants "provided no reason to believe that [they] [would] be hampered in their defense" by the plaintiffs' "inability to name the particular employees" involved); *Morrison v. Wells Fargo Bank, N.A.,* 30 F.Supp.3d 449, 457 (E.D.Va.2014) (finding that the plaintiff's allegations satisfy Rule 9(b) because, while the plaintiff "did not identify the name of the ... employee with whom he spoke, he identifie[d] the employee as an agent of [the defendant]"); *Stumm v. BAC Home Loans Serv., LP,* 914 F.Supp.2d 1009, 1013–14 (D.Minn.2012) ("The failure to provide the name of an employee who made an allegedly fraudulent statement is not necessarily fatal, as long as the complaint pleads sufficient facts to allow the employer readily to identify the employee who spoke to the plaintiff."); *Pagan–Negron v. Wells Fargo, N.A.,* No. 11–CV–398, 2011 WL 10604778, at *6 (W.D.Tex. Sept. 6, 2011) ("Plaintiff does not know the name of the person who made the representation over the phone, but that should not be fatal to her claim."); *In re Catfish Antitrust Litigation,* 826 F. Supp. 1019 (N.D. Miss. 1993)(holding that some relaxation of rule requiring that fraud be pled with particularity is appropriate in instances of alleged corporate or business fraud in which information is in defendant's hands or control); *Chisholm v. Foothill Capital Corp.,* 940 F.Supp. 1273 (N.D. Ill. 1996) (holding that, even in fraud cases, there is exception to requirement that allegation be pleaded with particularity in complaint when facts on which allegations are based are in defendant's control).

If, however, the Court finds that Plaintiff's allegations are not specific enough under the Rules, Plaintiff respectfully requests leave to amend this Count after he has an opportunity to review Defendants' discovery responses.

## IV. Conclusion

For the reasons stated herein, Plaintiff respectfully requests that this Court deny the Motion to Dismiss and require Defendants to answer the Second Amended Complaint.

Respectfully Submitted,

Dated:  April 10, 2018                    SHUMAKER, LOOP & KENDRICK, LLP

*/s/ Amanda Ellen B. Clay*
C. PHILIP CAMPBELL, JR. ESQUIRE
Florida Bar Number 0160973
pcampbell@slk-law.com (primary email)
jramos@slk-law.com    (secondary email)
AMANDA ELLEN B. CLAY, ESQUIRE
Florida Bar Number 28808
mclay@slk-law.com (primary email)
jramos@slk-law.com    (secondary email)
101 East Kennedy Blvd., Suite 2800
Tampa, Florida 33602
(813) 229-7600 / (813) 229-1660 (Fax)
*Attorney for Plaintiff, Glenn R. Baker*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

*/s/ Amanda Ellen B. Clay*
Attorney