UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GLENN R. BAKER,

      Plaintiff,

v.                                        Case No: 2:17-cv-572-FtM-99MRM

BRUNSWICK CORPORATION,
MARINEMAX EAST, INC. and
BOSTON WHALER, INC.,

      Defendants.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 39) filed on March 27, 2018. Plaintiff filed a Response in Opposition (Doc. 40) on April 10, 2018. For the reasons set forth below, the Motion is granted in part and denied in part.

## **BACKGROUND**

Plaintiff Glenn R. Baker sues Defendants for their failure to honor their warranties and repair his defective boat. Because repairs were unsuccessful, Plaintiff attempted to rescind the purchase, which Defendants refused. The Court previously dismissed the Amended Complaint (Doc. 18) as a shotgun pleading because Plaintiff lumped Defendants together under each count. (Doc. 34). In that Opinion and Order, the Court

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

deferred ruling on Defendants' argument that Plaintiff's warranty claims failed for lack of privity, and encouraged the parties to review a recent published opinion from the Eleventh Circuit on that issue. *Godelia v. Doe 1*, 881 F.3d 1309 (11th Cir. 2018). Plaintiff filed a Second Amended Complaint (Doc. 35) on February 26, 2018. Defendants again move to dismiss due to the continued insufficiency of the pleading, and lack of privity.

## THE FACTS

When reviewing a Motion to Dismiss, the Court accepts Plaintiff's factual allegations as true and takes them in a light most favorable to Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Thus, Plaintiff's Second Amended Complaint (Doc. 35) alleges: Defendant Boston Whaler designs, manufactures, and markets the 35-foot Boston Whaler Outrage, which is the vessel Baker purchased. (*Id.*, ¶¶ 6-7). Defendant Brunswick, through its Mercury Marine Division, manufactured part of the vessel, including its engine. (*Id.*, ¶ 10). Defendant MarineMax, acting as a dealer and agent of Boston Whaler and Brunswick, sold the vessel to Plaintiff. (*Id.*, ¶ 12).

On or about May 8, 2015, Baker purchased his 35-foot Boston Whaler Outrage from MarineMax, a dealer, representative, and agent of Brunswick and Boston Whaler for approximately $500,000. (Doc. 35, ¶ 18). Through its marketing materials, Boston Whaler marketed and represented that the joystick piloting system in Plaintiff's vessel provided "effortless docking and ultimate confidence when cruising even the roughest ocean waves." (*Id.*, ¶ 2). Baker relied on these and other representations when purchasing the vessel. (Id., ¶ 3). At the time of sale, MarineMax provided Baker with an executed Purchase Agreement, on behalf of itself, Boston Whaler, and Brunswick. (*Id.*, ¶ 19; Doc. 35-1). The back of the Purchase Agreement reads, in part:

"MANUFACTURER'S WARRANTY. The boat, motor and accessories sold pursuant to this agreement are only subject to applicable manufacturer's warranties, if any, except, as otherwise expressly provided in this agreement." (Doc. 35-1, p. 3). With the Purchase Agreement, MarineMax provided Baker with a copy of an express limited warranty by Boston Whaler (Doc. 35-3) and a Product Protection Plan and Benefits from "Mercury Marine Division of Brunswick Corporation." (Doc. 35-2).

Eight days before the delivery of the vessel to Plaintiff, a Notice of Recall of the boat's steering system had been issued; yet, Defendants failed to disclose this to Plaintiff prior to the purchase. (Doc. 35, ¶ 23). Plaintiff has attached copies of the recall notice to his Second Amended Complaint.[2] (Docs. 35-4, 35-5). Initially, the recall notice stated there was a manufacturing defect in the engine's steering cylinder sensor, which could lead to a loss of steering. (Doc. 35-4). In a later letter from Brunswick to Plaintiff, Brunswick stated that the problem was with the power steering pump intermittently shutting down. (Doc. 35-5). Defendants had notice that the steering system was defective and of the recall notice at the time of the purchase but did not notify Plaintiff until three weeks after delivery of the vessel. (Doc. 35, ¶ 26).

On or about December 2015, the steering system failed while Plaintiff was using the boat, and has continuously failed despite repeated attempts to repair the defective system with participation by all three Defendants. (Doc. 35, ¶ 27). MarineMax, as an

---

[2] The "Notice for Recall Under the U.S. Federal Boat Safety Act" does not appear to be dated, but the postage stamp indicates that it was mailed to Plaintiff on May 29, 2015. The letter itself includes a small date in the lower left-hand corner of 04/30/15. (Doc. 35-4, p. 3).

3

agent of Brunswick and Boston Whaler, undertook to repair the vessel under warranty on several occasions from December 2015 until April 2017.[3] (*Id.*, ¶ 28).

On June 14, 2017, Baker was told by John Foster, a representative of Boston Whaler and/or Brunswick, that: (1) it was a high priority to make Baker's boat work properly; (3) they had finally determined the root cause of the problems; (3) the re-designed parts for the ultimate fix were being sent out; and (4) Baker's boat would be given priority. (Doc. 35, ¶ 30). Mr. Foster's statements were confirmed in a phone call from another representative of Boston Whaler and/or Brunswick in Wisconsin. (*Id.*, ¶ 31). Notwithstanding these representations, none of the statements turned out to be true at the time they were made. (*Id.*, ¶ 32). Following this meeting, Baker took his boat back to MarineMax and was told by MarineMax representatives that new parts had been received and the defective parts would be replaced with working parts. (*Id.*, ¶ 33). But the vessel failed again in open waters after this replacement, with Baker's family on board. (*Id.*, ¶ 34).

Because of the continuing unresolved issues with the steering system and the numerous breakdowns in transit through the Gulf of Mexico and international waters, Baker returned the vessel to MarineMax in August 2017 and asked for a rescission of the sale and related damages. (Doc. 35, ¶ 35). Defendants refused. The boat remains unfit for Plaintiff's use. (*Id.*, ¶ 40).

---

[3] Specifically, Baker had the vessel serviced by one or more of the Defendants at least five times between December 31, 2015 and June 14, 2017 including: January 4, 2016; May 27, 2016; October 27, 2016; October 31, 2016; February 27, 2017 (service not completed until April 3, 2017); and April 21, 2017. (Doc. 35, ¶ 29).

4

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). In addition, to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." *Id.* at 555; *see also Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). Like its counterpart above, Rule 12(b)(6) requires more than "unadorned, the-defendant-unlawfully-harmed-me" accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability [also] fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). The Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Plaintiff is proceeding on a thirteen-count Second Amended Complaint (Doc. 35), raising claims against all Defendants under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2310, *et seq.*, for breach of express and implied warranty, and under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Plaintiff also asserts a state law claim for false marketing/promotion against Boston Whaler only.

### A. Magnuson Moss, Express Warranty Claims v. Brunswick and Boston Whaler (Counts 2, 3, 5, 6)

Defendants argue that the express warranty claims against Brunswick and Boston Whaler fail because there is no privity of contract between themselves and Plaintiff. The Magnuson Moss Warranty Act (MMWA) provides a separate "statutory cause of action to consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with [any obligation imposed by the Act] or under a written warranty, implied warranty or service contract.'" *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 617-18 (11th Cir. 2001) (quoting 15 U.S.C. § 2310(d)(1)). Under any MMWA claim, whether privity is required, and the meaning and creation of any warranty, hinges on applicable state law. *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005).

In *Godelia v. Doe 1*, the Eleventh Circuit discussed whether a claim for breach of express warranty requires privity of contract between the parties under Florida law, stating: "Our review of Florida law reveals no clear rule about whether privity is required in every Florida express warranty claim." 881 F.3d at 1321 (*comparing T.W.M. v. Am. Med. Sys.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) *with Smith v. Wm. Wrigley Jr. Co.*, 663

F. Supp. 2d 1336, 1342-43 (S.D. Fla. 2009)). There, the court noted that even if it assumed privity is required, plaintiff had sufficiently alleged it, accepting the allegations as true. *Id.* at 1321-22.

The Court agrees that it is not clear that privity is always required under Florida law to state a claim for breach of express warranty. The general rule requires privity in order to state an express warranty claim. *See Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *see also Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637 So. 2d 968, 970 (Fla. 5th DCA 1994) (manufacturer of floor paint could not be held liable to general contractor for breach of express warranties, where there was no sale from manufacturer to contractor, no privity between them, no contract between them, no reliance by contractor on any warrant, and no warranty was given to contractor). Other cases have held, however, that some factual circumstances satisfy the privity requirement even absent a purchase directly from the manufacturer. *New Nautical Coatings, Inc. v. Scoggin*, 731 So. 2d 145, 147 (Fla. 4th DCA 1999) (finding privity when the paint manufacturer's representative was heavily involved in the transaction where the third-party paint shop provided the services to the plaintiff); *see also ISK Biotech Corp. v. Douberly*, 640 So. 2d 85 (Fla. 1st DCA 1994) (finding privity where manufacturer's representative informed the third-party fungicide seller that the seller could assure the plaintiff that the subject fungicide would not destroy the plaintiff's crop); *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of Am., Inc.*, 444 So.2d 1068, 1072 n. 4 (privity existed where manufacturer's representative made express warranty through

7

the direct contacts with the ultimate purchaser/consumer who bought the product from the third party distributor).

At the Motion to Dismiss stage, the Court cannot determine that privity will fail in this case. Plaintiff alleges that MarineMax acted as an agent for Boston Whaler and Brunswick when it undertook to repair the vessel under the warranties and pursuant to the recall. (Doc. 35, ¶¶ 12, 59). Plaintiff also alleges that MarineMax supplied a Boston Whaler Limited Warranty to Plaintiff by at the time of sale.[4] (Doc. 35-3). MarineMax is an authorized dealer of products for Boston Whaler and/or Brunswick. (Doc. 35, ¶ 12). Thus, the Motion to Dismiss will be denied on Counts 2, 3, 5, and 6.[5]

### B. Magnuson Moss, Express and Implied Warranty Claims v. MarineMax (Counts 1, 4, 7)

Admitting that privity exists between Plaintiff and MarineMax, Defendants argue that both the express and implied warranty claims against MarineMax are still due to be dismissed because there is no written MarineMax warranty and MarineMax disclaimed all warranties in the Purchase Agreement, which are clear and conspicuous as required by Florida law. *See* Doc. 35-1, pp. 2-3. Plaintiff responds that the Florida's Uniform

---

[4] Defendants also argue that even if Plaintiff has alleged privity with Boston Whaler, Plaintiff's claims nonetheless fail because the Boston Whaler Limited Warranty explicitly excludes coverage for the steering mechanism. *See* Doc. 35-3, EXCLUSION 2. Defendants have not convinced the Court that this exclusion applies and dismissal at this stage is improper. Plaintiff has alleged that he was provided with the Boston Whaler Limited Warranty at the time of sale and it was breached, causing him damages. This is sufficient.

[5] Of course whether Plaintiff can meet his burden to establish that an agency relationship actually existed between MarineMax and Brunswick and/or Boston Whaler is a question for another day.

Commercial Code[6] specifies three circumstances under which an express warranty may arise, even absent a written warranty:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Fla. Stat. § 672.313(1).

While the Court agrees this is a correct statement of the law, in this case, MarineMax disclaimed all warranties, express and implied, and Plaintiff has cited the Court to no authority that such a disclaimer would not apply to exclude the three circumstances above. Florida law authorizes sellers to exclude warranties, both express and implied, in the sale of goods. *See* Fla. Stat. § 672.316. Here, the Purchase Agreement specifically excluded all express warranties by MarineMax, as well as implied warranties. (Doc. 35-1). Regarding implied warranties, in his Second Amended Complaint, Plaintiff alleges breach of implied warranty of merchantability and fitness for a particular purpose. (Doc. 35, ¶¶ 119, 127, 135). To properly disclaim an implied warranty of merchantability, "the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous." Fla. Stat. § 672.316(2).

---

[6] Because the Sales Contract involves the sale of a good, Article 2 of the Florida Uniform Commercial Code applies. *See* Fla. Stat . § 672.102.

9

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. Whether a term or clause is conspicuous or not is for decision by the court. Conspicuous terms include the following:
>
> (a) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> (b) Language in the body of a record or display in larger type than the surrounding text or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Fla. Stat. § 671.201(10).

Here, in bold-face capital letters immediately above Plaintiff's signature, the front page of the Purchase Agreement includes a reference to the additional terms and conditions of the sale on the reverse side of the document: "**SEE THE REVERSE SIDE OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING LIMITATIONS OF WARRANTIES**." (Doc. 35-1, p. 2) (emphasis in original). Again, in bold-face capital letters on the reverse side of the Purchase Agreement, MarineMax included a separate paragraph titled "**DISCLAIMER OF WARRANTIES**" (the "Warranty Disclaimer"). (*Id.* at 3, ¶ 2) (emphasis in original). The Warranty Disclaimer states that MarineMax's sale of the subject boat was "AS IS." (*Id.*) In bold-face capital letters, the Warranty Disclaimer disclaimed any and all warranties, including the implied warranty of merchantability, on behalf of seller MarineMax:

> **THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, unless Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale. If Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale, than any implied warranties shall be limited in**

**duration to the duration of Seller's written warranty or service contract.**

(*Id.*) (emphasis in original). The Court finds that the "Disclaimer of Warranties" section in the Purchase Agreement is conspicuous, and that MarineMax effectively disclaimed any express or implied warranties in the agreement. Therefore, Counts 1, 4, and 7 are dismissed with prejudice.[7]

### C. Implied Warranty Claims v. Brunswick and Boston Whaler (Counts 8, 9)

Defendants argue that like his express warranty claims, Plaintiff's factual allegations fail to state a claim for breach of implied warranty due to the absence of privity. The Court notes it is not clear that privity is always required under Florida law to state a claim for breach of implied warranty. Generally, "an implied warranty cannot exist where there is no privity of contract." *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1183 (N.D. Fla. 2007) (citing *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005)). If a buyer purchases a vehicle from a dealer, "the existence of a manufacturer's warranty which runs to the buyer does not in and of itself establish privity" between the buyer and the manufacturer of the vehicle. *David v. American Suzuki Motor Corp.*, 2009 WL 1838323, *8 (S.D. Fla. 2009). Therefore, "[p]rivity of contract does not exist where plaintiff has purchased a defective product from a dealer and not directly from the manufacturer/warrantor." *Henson v. Allison Transmission*, No. 07-80382-CIV, 2008 WL 239153, *3 (S.D. Fla. 2008) (citing *Bailey v. Monaco Coach Corp.*, 168 Fed. Appx. 893, 894 n.1 (11th Cir. 2006)); *see also Tindle Enterprises, Inc. v. Plastic Trends, Inc.*, No. 3:09cv86/RV/EMT, 2009 WL 1011884, *2-3 (N.D. Fla. 2009). However, if the plaintiff

---

[7] Plaintiff's argument that MarineMax should be estopped from disclaiming all warranties because it undertook to do warranty work on behalf of the other Defendants is without merit.

11

shows the existence of an agency between a dealer and a manufacturer, the agency satisfies the privity requirement for an implied warranty. *Insurance Co. of N. Am. v. American Marine Holdings, Inc.*, No 5:04-cv-OC-10GRJ, 2005 WL 3158049, *5 (M.D. Fla. 2005); *McGraw v. Fleetwood Enter. Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, *3 & n.5 (M.D. Fla. 2007).

As the Court concluded above regarding the express warranty claims, the Court cannot determine that privity fails in this case at the Motion to Dismiss stage as to Defendants Brunswick and Boston Whaler; therefore, the Motion to Dismiss is denied on Counts 8 and 9.

### D. FDUTPA (Counts 10-12)

Defendants argue that Plaintiff failed to state a FDUTPA violation because such violations require heightened pleading under Federal Rule of Civil Procedure 9(b). Plaintiff responds that heightened pleading does not apply.

The Florida Legislature enacted FDUTPA "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). The Act declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A claim for damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82 (Fla. 4th DCA 2008) (citation omitted); *see also KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073-74 (Fla. 5th DCA 2008).

There has been inconsistency among Florida's federal courts regarding whether Rule 9(b)'s pleading standard applies to all FDUTPA claims or only those alleging fraudulent activity. *See, e.g., Nationwide Mut.Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290 (M.D. Fla. 2009) ("The Court is not convinced that the specificity requirements of [Rule 9(b) ] appl[y] to [all] FDUTPA [claims], although it recognizes this view is in the minority in this District."). However, it appears that a trend has emerged: Absent an allegation of fraudulent conduct, a FDUTPA claim need not meet Rule 9(b)'s heightened-pleading requirement. *See, e.g., In re Brican Am. LLC Equip. Lease Litig.*, No. 10–MD–02183–PAS, 2014 WL 250246, at *10 (S.D .Fla. Jan. 22, 2014); *Foster v. Chattem, Inc.*, No. 6:14–CV–346–ORL–37, 2014 WL 3687129, at *1 (M.D. Fla. July 24, 2014); *Hill v. Hoover Co.*, 899 F.Supp.2d 1259, 1263 (N.D. Fla. 2012). As one court explained, "Rule 9(b)'s requirements are implicated by allegations of fraud, but because FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts like fraud, the plaintiff need not prove the elements of fraud to sustain an action under the statute." *Toback v. GNC Holdings, Inc.*, No. 13–80526–CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) (internal citations omitted). But the Court need not provide an explicit holding on this issue today. A review of Counts 10-12 reveals that they meet every pleading standard, even the stringent one set out by Rule 9(b).

Plaintiff avers that Defendants, on their own or as a representative of the other Defendants, "made material misrepresentations and omissions in an effort to induce Baker to enter into a purchase agreement to purchase the 35' Boston Whaler Outrage." (Doc. 35, ¶¶ 141, 148, 156). Plaintiff further alleges that Defendants engaged in deceptive and unfair trade practices when they failed to "disclose the defects with the

steering system and the prior recall notice" of which they knew. (*Id.*, ¶¶ 143, 151, 159). Plaintiff states that the representations caused him damage, including the loss of the purchase price, and use of the vessel. (*Id.*, ¶¶ 144, 152, 160). Regarding Brunswick and Boston Whaler, Plaintiff alleges that Foster, as a representative of the companies, made affirmative, untrue misrepresentations to Plaintiff upon which he relied by taking his boat back for repairs. (*Id.*, ¶¶ 30-31, 149, 157). These allegations, when taken as true, are enough to satisfy Rule 9(b) and alert Defendants to the exact misconduct with which they are charged. See *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

### E. False Marketing/Promotion in Violation of Fla. Stat. §§ 817.40(5) & 817.41(1) v. Boston Whaler (Count 13)

Defendants argue that Count 13 fails because it is not pled with the requisite specificity required by Rule 9(b). Defendants further argue that the alleged misrepresentation identified by Plaintiff is not an actionable statement, but amounts to nothing more than puffery or is otherwise not a false statement.

In Count 13, Plaintiff alleges:

> In connection with promoting and convincing customers, including Baker, to purchase and use its 2015 Outrage, Boston Whaler made marketing statements in print and directly to consumers, including the statement that the Outrage and its steering system were 'designed to provide effortless docking and ultimate confidence when cruising even the roughest ocean waves.'

(Doc. 35, ¶ 162). Plaintiff alleges these marketing statements attest to the quality and reliability of the Mercury joystick steering system in particular and these statements are false and misleading and Baker relied on them when purchasing the vessel. (*Id.*, ¶¶ 163-68). He also alleges he was damaged.

14

To state a claim for damages under Florida Statutes §§ 817.40(5) and 817.41(1), a plaintiff must establish "the party relied on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement," including: (1) the representor made material misrepresentation, (2) the representor knew or should have known the falsity of the statement, (3) the representor intended inducement, and (4) the plaintiff justifiably relied and suffered damages. See *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007). A seller's exaggeration of statements of opinion cannot constitute a misrepresentation of material fact, otherwise known as puffery. *Wasser v. Sassoni*, 652 So. 2d 411 (Fla. 3d DCA 1995).

The Court disagrees with Defendants' argument that the claim fails because it does not satisfy Rule 9(b), because even if heightened pleading is required, Plaintiff has satisfied it. However, the Court agrees that the statement is mere puffery, and not a material misrepresentation, as the statement is simply an opinion that the 35-foot Outrage provides the "ultimate confidence." See *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. 4th DCA 2017) ("A promise to deliver an 'exceptional' product or service is a matter of opinion rather than fact, and constitutes non-actionable puffery.").

### F. Shotgun Pleading

Defendants' argument that Plaintiff's Second Amended Complaint should be dismissed because it continues to lump defendants together fails. Plaintiff has separated the counts against each Defendant, and if Plaintiff is unclear on which Defendant is responsible for which misrepresentations, this can be established through discovery. The

15

Second Amended Complaint is sufficient to put Defendants on notice of the claims against them and it would not be impossible for Defendants to frame a response.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss (Doc. 39) is **GRANTED IN PART AND DENIED IN PART**. Counts 1, 4, 7, and 13 are **dismissed with prejudice**; otherwise, the Motion is denied on all other counts. Defendants shall file an answer within fourteen (14) days of this Opinion and Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 25th day of April, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record